**DISCOVER PROPERTY AND CASUALTY INSURANCE COMPANY, a foreign corporation, Plaintiff,**

v.

**LEXINGTON INSURANCE COMPANY, Defendant.**

Case No. 08–81326–CIV.

United States District Court, S.D. Florida.

Oct. 16, 2009.

John R. Catizone, Selena Donaldson Stallworth, Litchfield Cavo LLP, Tampa, FL, for Plaintiff.

Philip E. Glatzer, Marlow Connell Valerius Abrams Adler & Newman, Coral Gables, FL, for Defendant.

### ORDER GRANTING LEXINGTON'S MOTION FOR SUMMARY JUDG-MENT AND DENYING DISCOV-ER'S MOTION FOR SUMMARY JUDGMENT

KENNETH L. RYSKAMP, District Judge.

THIS CAUSE comes before the Court pursuant to Defendant Lexington Insur-ance Company's ("Lexington") Motion for Summary Judgment, filed March 3, 2009 [**DE 14**]. Plaintiff Discover Property and Casualty Insurance Company ("Discover") responded on March 20, 2009 [**DE 17**] and cross-moved for summary judgment on March 20, 2009 [**DE 17**]. Lexington re-plied on March 30, 2009 [**DE 18**]. Lexing-ton responded to Discover's Cross–Motion for Partial Summary Judgment on March 30, 2009 [**DE 19**]. Discover replied on April 1, 2009 [**DE 21**]. The Court held a hearing on this matter on April 27, 2009. These motions are ripe for adjudication.

### I. BACKGROUND

On May 24, 1999, Albertson's, Inc. ("Al-bertson's") entered into a multi-store agreement with Dress for Success Clean-ers ("DFS") whereby the parties agreed that DFS would operate a dry clean-ing/laundry pick-up and drop-off to be lo-cated in various Albertson's supermarkets. On May 21, 2002, DFS entered into a license agreement with BHA, LLC d/b/a Dry Cleaning Unlimited ("BHA") whereby BHA agreed to provide an off-site dry cleaning facility for select supermarkets doing business with DFS, including Albert-son's.

On January 13, 2005, Sebastian Rapisar-da ("Rapisarda"), a BHA employee on his way to Albertson's to pick up/drop off laundry, operated his vehicle on Southern Boulevard near the intersection of Benoist Farms Road in Palm Beach, County, Flori-da, in a manner that caused injuries and damages to Allen Roberts ("Roberts"). Roberts became a quadriplegic as a result of the accident. Roberts sued Albertsons, DFS, BHA and Rapisarda.[1]

Discover issued commercial automobile policy number D002A00261 to Albertson's,

---

1. DFS, a Defendant in the original Complaint, settled with Roberts prior to the bringing of

effective May 1, 2004 through May 1, 2005. The Discover policy included a $2,000,000 Self–Funded Retention ("SFR"). Lexington issued a commercial general liability policy to Albertson's effective May 31, 2004 through May 1, 2005. The Lexington policy also included a $2,000,000 SFR.

Albertson's defended itself at all times under its SFR, while seeking indemnity from both Discover and Lexington. Discover and Lexington agreed to handle Roberts's claim under a reservation of rights in connection with their respective policies.

Mediation in the underlying action occurred on September 16, 2008. The case settled for $2,700,000, with Albertson's paying its remaining SFR of $1,700,000 and Discover paying $1,000,000. Lexington declined to contribute any sum of money toward the settlement on the ground that the standard auto exclusion in its commercial general liability insurance policy excluded coverage for Albertson's and because the alleged "joint/venture partnership" was not a named insured in the Declarations section of the policy.

Discover filed this action on November 6, 2008 to recover monies it alleges Lexington should have paid toward the settlement. Count I of this action seeks declaratory relief as to whether the underlying action implicated coverage under the Lexington policy and as to whether the Lexington policy is primary to, or, at a minimum, co-primary with the Discover policy. Count II is a claim for equitable contribution, claiming that Discover is entitled to equitable contribution from Lexington for $500,000. Count III is a claim for equitable subrogation.

Lexington has moved for summary judgment, seeking a declaration of no liability

the Second Amended Complaint.

for the accident. Discover has cross-moved for partial summary judgment, seeking a declaration that Lexington's policy covers the accident.

## II. *LEGAL STANDARD*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). An issue is "material" if it is a legal element of the claim under applicable substantive law that may affect the resolution of the action. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is "genuine" if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. *See id.* The movant may meet this standard by presenting evidence demonstrating the absence of a dispute of material fact or by showing that the nonmoving party has not presented evidence in support of an element of its case on which it bears the burden of proof. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53. The moving party need not supply "affidavits or other similar materials negating the opponent's claim." *Id.*

Once the moving party meets its burden, the nonmoving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(e)). Although the nonmovant need not present evidence that would be admissible at trial, it may not rest on his pleadings. *Id.* "[T]he plain language of rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. at 2552. *See also Graham v. State Farm Mut. Ins. Co.,* 193 F.3d 1274, 1281–82 (11th Cir.1999).

### III. *DISCUSSION*

#### 1. Underlying Action

The Second Amended Complaint in the underlying action contains three unnumbered counts, "Joint Enterprise/Partnership," "Employment, Agency and Apparent Agency" and "Negligence of All Defendants." Roberts alleges that at all times material, Rapisarda, while driving the dry cleaning delivery vehicle that struck Roberts, was acting as either an employee or agent of Albertson's, which allegedly was involved in a dry cleaning joint venture with BHA and DFS. There are no allegations in the Complaint that Albertson's committed any independent act of negligence. The Complaint was based solely on the legal theory that Albertson's was vicariously liable for the negligent driving of an auto by Rapisarda.

The duty to indemnify depends on the facts presented at trial or the facts attendant to the settlement agreement:

[W]hereas the duty to defend is measured by the allegations of the underlying complaint, the duty to indemnify is measured by the facts as they unfold at trial or are inherent in the settlement agreement.

*Northland Cas. Co. v. HBE Corp.,* 160 F.Supp.2d 1348, 1360 (M.D.Fla.2001) (quotation omitted).

#### 2. Policy Language

Lexington maintained a policy of commercial general liability coverage for Albertson's as the named insured. The coverage part of this policy provides, in part, as follows:

**SECTION I COVERAGES**

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement.**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies ...

The Lexington policy contains an auto exclusion that provides as follows:

**2. Exclusions.**

This insurance does not apply to:

...

**g. Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or

loaned to any insured. Use includes operation and "loading or unloading."

The Who Is An Insured portion of the Lexington policy provides, in part, as follows:

### SECTION II  WHO IS AN INSURED

1. If you are designated in the Declarations as:

. . .

   d. An organization other than a partnership, joint venture or limited liability company, you are an insured. . . .

. . .

2. Each of the following is also an insured:

   a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" is an insured for: . . . .

. . .

4. Any organization your newly acquired or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However

. . .

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

The Business of the Named insured is: **FOOD/DRUG STORE**

The first page of the Declarations of the LEXINGTON policy provides, in part, as follows:

**LEXINGTON INSURANCE COMPANY**

**COMMERCIAL GENERAL LIABILITY POLICY**

**OCCURRENCE FORM**

**DECLARATIONS**

Item 1. Named Insured and Address:

**ALBERTSON'S, INC.**

### 3.  Auto Exclusion

▇ The Complaint in the underlying action, which seeks only vicarious liability against Albertson's based upon legal theories of employment/agency, joint venture/partnership and negligence, alleges that Rapisarda was an employee or agent of Albertson's as well as all three alleged participants in the dry cleaning joint venture. Roberts also alleges that the accident occurred while Rapisarda was driving an auto in furtherance of the joint venture.

▇ The act of an employee or agent of a corporation is the act of the corporation itself, since an inanimate organization such as a corporation must act only through individual persons.

A [c]orporation is a legal entity and necessarily can perform its authorized

functions only through the agency of individual persons for whose unlawful or negligent acts in the performance of functions and duties within the scope of the employment of agency, the corporation is liable under the common law doctrine of respondeat superior, as it exists in this State ...

*J.C. Penny Co. v. McLaughlin,* 137 Fla. 594, 188 So. 785, 786 (1939). *See also Brown v. Cahill,* 157 So.2d 871, 873 (Fla. 3d DCA 1963) ("A corporation acts only through its agents and often acts through many different agents. At law it is held responsible for the acts of these agents.") (citations omitted).

■ Florida law provides that each joint venturer is vicariously liable for the acts of a servant working on behalf of the joint venture, no matter which joint venturer actually employed the servant:

> Participants in a joint venture are each liable for the torts of the other or of the servants of the joint undertaking committed within the course and scope of the undertaking, without regard to which of the joint venturers actually employed the servant....

*Florida Tomato Packers, Inc. v. Wilson,* 296 So.2d 536, 539 (Fla. 3d DCA 1974) (citations omitted). *See also Florida Rock & Sand Co. v. Cox,* 344 So.2d 1296, 1298 (Fla. 3d DCA 1977)("The negligence of one joint venturer is imputed to the other in an action based upon the tortious conduct of the joint venturer committed while within the scope of the joint venture") (citing *Florida Tomato Packers,* 296 So.2d at 539).

The law governing joint venture liability also applies to partnership liability. *See Kislak v. Kreedian,* 95 So.2d 510, 514 (Fla. 1957) ("It has been universally held that while 'joint adventure' and partnership are separate legal relationships, both relationships are governed by the same rules of law. The laws governing partnership are applicable to joint adventurers."); *State Contracting & Eng'g Corp. v. Condotte Am., Inc.,* No. 97–7014–CV, 2004 WL 5500705, at *17 (S.D.Fla. Oct. 27, 2004) ("Because the law of partnerships governs joint venturers, any party to the joint venture may bind the other party.").

*Medical Staffing Network, Inc. v. New Hampshire Ins. Co.,* Case No. 00–8251–CIV–HURLEY, 2001 WL 1147447 (S.D.Fla. June 15, 2001), granted summary judgment for a commercial general liability insurance carrier whose policy contained an auto exclusion. An employee of the insured corporation who was driving her own auto was involved in an accident that resulted in a fatality. The employee was not covered under the policy while driving her own auto. When the estate sued the corporation on a theory of respondeat superior, the insurance carrier refused to defend based upon the auto exclusion. *Medical Staffing* held that both the corporation and the employee operated the auto involved in the accident:

> Under the doctrine of respondeat superior, an employer is liable, despite having no fault whatsoever, for the acts of its employees taken within the scope of their employment.
>
> * * * *
>
> Nurses Plus was not alleged to have done anything more or different than its employee. Rather, by virtue of respondeat superior, the plaintiff sought to impute the negligence of the employee ... to the employer.... For all practical purposes, this was the functional equivalent of an allegation that Nurses Plus caused bodily injury and damages

through the use of an automobile. Such an allegation—even with the full benefit of the severability clause—fell within the insurance policy's exclusion, and this negated Nurses Plus' entitlement to coverage.

2001 WL 1147447, at *3 (quotation omitted).

*Michael Carbone, Inc. v. Gen. Accident Ins. Co.*, 937 F.Supp. 413, 423 (E.D.Pa. 1996), involved an auto exclusion barring coverage for losses arising out of the operation of "any auto" by "any insured." When an employee's negligent operation of an auto resulted in injury to a third party, the employee's act of operating the auto was attributed to the employer, notwithstanding the separation of insureds clause in the policy.

Accordingly, there was no coverage under the general liability insurance policy for the named insured employer.

*Union Am. Ins. Co. v. Maynard*, 752 So.2d 1266, 1268–1269 (Fla. 4th DCA 2000) is not to the contrary. In Union American, an endorsement in a commercial general liability insurance policy deleted all employees from the definition of "insured." The court held that the auto exclusion did not bar coverage and distinguished Carbone solely on the basis of the endorsement:

> We distinguish this case from that primarily relied upon by Union American, *Michael Carbone, Inc. v. General Accident Insurance Co.*, 937 F.Supp. 413 (E.D.Pa.1996). That case involved the construction of a general liability policy containing an automobile exclusion similar to that in this case; however, the policy in *Carbone* did not contain an endorsement that excluded employees as defined insureds under the policy, as did

Union American's policy. In this case, it is the operation of the endorsement on the language of the policy that creates the ambiguity which compels the result we reach.

Discover relies on *U.S. Liability Ins. Co. v. Dehkterman*, Case No. 00 CV 2273(ILG), 2002 WL 31780174, at *1 (E.D.N.Y., Oct. 4, 2002), but *Dehkterman* is inapposite because it presents no issues of vicarious liability: the driver of the vehicle involved in the accident was not an employee of the insured business.

Discover also cites *Creel v. Louisiana Pest Control Ins., Inc.*, 723 So.2d 440, 441–44 (La.App. 3 Cir.1998), but *Creel* did not present issues of vicarious liability. In *Creel*, the president of an exterminating corporation was driving a vehicle in the course and scope of his employment when he hit and injured several people in another vehicle. An auto exclusion barred coverage for "bodily injury ... arising out of the ownership, maintenance, use or entrustment to others of any ... auto ... owned or operated by or rented or loaned to any insured." *Id.* at 443 n. 1. The insurance policy designated executive officers and directors as insureds, but only with regard to their officer or director duties. Employees, a category distinct from officers and directors, were insureds for acts taken within the scope of their employment. The president was not performing officer or director duties at the time of the accident and therefore was not an insured. Since the president was not an insured, the auto exclusion did not apply to bar coverage. *Creel* merely concluded that the president's non-insured status failed to trigger the auto exclusion and did not address respondeat superior as did *Medical Staffing* or *Carbone.*

Rapisarda's operating the auto as an employee or agent of Albertson's or Al-

bertson's two alleged joint venturers was also the act of Albertson's. Imputation of Rapisarda's actions to Albertsons is appropriate whether Rapisarda was an employee or an agent of Albertson's. If Rapisarda was Albertson's employee, there would be no coverage because the auto exclusion in Lexington's policy excludes coverage for liability "arising out of" the "use" of "any auto" "operated" by "any insured." If Rapisarda were an agent rather than an employee, he would not be an insured, but the auto exclusion would apply via respondeat superior. Accordingly, Lexington is not liable for any coverage for Albertson's liability for the accident and is under no obligation to contribute to the settlement between Roberts and Albertson's.

### 4. Joint Venture Not Listed

■ Lexington argues that since the joint venture was not designated as a named insured in the declarations section of Lexington's policy, Lexington's policy afforded no coverage to Albertson's or Rapisarda.

■ Where a policy of insurance requires a joint venture to be designated as a named insured in the policy, the carrier need not cover any liability arising out of an undesignated joint venture. For example, in *Forgues v. Heart of Texas Dodge, Inc.*, No. 02–0658, 266 Wis.2d 1060, 2003 WL 21801424 (Wis.App. July 31, 2003), the Court of Appeals of Wisconsin held as follows:

> Scottsdale Insurance argues that all claims based on a "joint venture" theory of liability should be dismissed. The Scottsdale policy states that an entity is an "insured" if it is "designated in the Declarations as ... [a] partnership or joint venture." The policy further

states: "No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations." Scottsdale argues that this language unambiguously precludes coverage for claims based on Subscriptions Plus's and Karleen Hillery's participation in a joint venture. If by this Scottsdale Insurance means that it need not provide coverage for the acts of non-Subscriptions Plus employees arising out of a joint venture, we agree.

*Forgues,* at \*32, (emphasis added). *Bott v. J.F. Shea Co., Inc.,* 299 F.3d 508, 511 (5th Cir.2002), concluded similarly:

> Mid–Continent's primary basis for denying coverage to Shea is because the joint venture clause of the policy precludes such coverage. Even if Shea was an additional insured, it would still be subject to the exclusions in the policy. Section II of the policy, defining who is an insured, contains a final clause stating that "no person or organization is an insured with respect to the conduct of any current or past partnership or joint venture that is not shown as a Named Insured in the Declarations." Because liability arose out of the joint venture which is not an insured, Shea is not entitled to coverage.

Here, the Lexington policy provides that no person or organization is an insured with respect to a joint venture not shown in the Declarations as a named insured. The alleged dry cleaning joint venture between Albertson's, DFS and BHA is not designated in the Declarations as a named insured, nor is it mentioned anywhere else in the policy. The Declarations designate Albertson's as operating a "FOOD/DRUG STORE." Discover attempts to character-

ize the dry cleaning service as an independent contractor arrangement rather than a joint venture or a partnership, but such is irrelevant because the Declarations section makes no mention of any type of dry cleaning service.

**5. Discover's Cross–Motion for Partial Summary Judgment**

Discover has filed a Cross–Motion for Partial Summary Judgment seeking a declaration that Lexington's commercial general liability coverage applies to the Roberts accident. The Court has already discussed this issue in its review of Lexington's Motion for Summary Judgment. Lexington's policy is not implicated because the acts of Rapisarda are attributable to Albertson's, thereby triggering the auto exclusion, and because the dry cleaning joint venture is not listed as a named insured in the Declarations section of the Lexington policy.

## IV. *CONCLUSION*

THE COURT, being fully advised and having considered the pertinent portions of the record, hereby

ORDERS AND ADJUDGES that Lexington's Motion for Summary Judgment, filed March 3, 2009 [DE14], is GRANTED, and Discover's Cross–Motion for Partial Summary Judgment, filed March 30, 2009 [DE 19], is DENIED. Final judgment shall be entered by separate order.

### *FINAL JUDGMENT*

THE COURT, having granted Defendant Lexington Insurance Company's Motion for Summary Judgment and denied Plaintiff Discover Property and Casualty Insurance Company's Cross–Motion for Partial Summary Judgment, hereby

ORDERS AND ADJUDGES that FINAL JUDGMENT IS HEREBY ENTERED in favor of Lexington Insurance Company and against Discover Property and Casualty Insurance Company. The Clerk of Court shall CLOSE this case and DENY any pending motions as MOOT.